UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMTIH DIVISION

DOUGLAS STOREY                                                          PLAINTIFF

      VS.                    Civil No. 2:13-cv-2264-MEF

CAROLYN W. COLVIN,                                                      DEFENDANT
Commissioner of Social Security Administration

## MEMORANDUM OPINION

Plaintiff, Douglas Storey, brings this action under 42 U.S.C. §405(g), seeking judicial review

of a decision of the Commissioner of the Social Security Administration ("Commissioner")

denying his claim for disability insurance benefits ("DIB") and supplemental security income

("SSI") under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C.

§423(d)(1)(A), 1382c(3)(A). In this judicial review, the court must determine whether there is

substantial evidence in the administrative record to support the Commissioner's decision. *See* 42

U.S.C. §405(g).

## I.    Procedural Background:

Plaintiff filed his application for DIB and SSI on March 13, 2012, alleging an onset date of

January 15, 2012, due to emphysema, low back and neck pain. (T. 201) Plaintiff's applications

were denied initially and on reconsideration. (T. 83-85, 86-88, 93-94, 96-98). Plaintiff then

requested an administration hearing, which was held in front of Administrative Law Judge

("ALJ"), Bill Jones, on January 24, 2013.

At the time of the hearing Plaintiff was 51 years of age and had graduated from high school.

His past relevant work experience included playing guitar, singing in a band, working as a truck

driver from 1995 to 2000, a construction worker from 1980 to 2010, at a lumber mill from April

2011 to June 2012, on a drilling rig in January 2012, and at a chicken plant from October 2011 to January 2012, and August 2012 to October 2012. (T. 177, 202)

On March 28, 2013, the ALJ found Plaintiff's disorder of the back severe, however the ALJ found Plaintiff's chronic obstructive pulmonary disease ("COPD"), right upper quadrant abdominal pain, nephrolithiasis and gallbladder contraction non-severe, as they did not cause more than minimal limitation in his ability to do basic work like tasks. (T. 28) Considering the Plaintiff's age, education, work experience and the residual functional capacity ("RFC") based upon all of his impairments, the ALJ concluded Plaintiff was not disabled from January 15, 2012, through March 28, 2013. (T. 33) The ALJ determined Plaintiff had the RFC to perform light work, except he could only occasionally: climb, balance, stoop, kneel, crouch and crawl. (T. 29)

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on November 5, 2013. (T. 1-4) Plaintiff then filed this action on December 20, 2013. (Doc. 1) This case is before the undersigned pursuant to consent of the parties. (Doc. 6) Both parties have filed briefs, and the case is ready for decision. (Doc. 10 and 11)

## II.    Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart,* 292 F.3d. 576, 583 (8th Cir. 2002). "Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support the Commissioner's decision." *Young v. Apfel,* 221 F.3d 1065, 1068 (8th Cir. 2000). "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Cox, v. Astrue,* 495 F.3d 617, 617 (8th Cir. 2007). The AJL's decision must be affirmed if the record contains substantial evidence to support it.   *Edwards v. Barnhart*, 314 F.3d, 964, 966 (8th

Cir. 2003).   The Court considers the evidence that "supports as well as detracts from the Commissioner's decision, and we will not reverse simply because some evidence may support the opposite conclusion." *Hamilton v. Astrue,* 518 F.3d 607, 610 (8th Cir. 2008). If after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel,* 221 F.3d at 1068.

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. §423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3), 1382(3)(c). A Plaintiff must show that his or her disability, not simply their impairments, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

If such an impairment exists, the ALJ must determine whether the claimant has demonstrated that he is unable to perform either his past relevant work, or any other work that exists in significant numbers in the national economy. (20 C.F.R. §416.945). The ALJ applies a five-step sequential evaluation process for determining whether an individual is disabled. (20 C.F.R. §404.1520(a)-(f)(2003).   Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker,* 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §404.150, 416.920 (2003).

3

### III.   Evidence Presented:

The medical evidence is as follows.

On January 11, 2007, Plaintiff went to the emergency room at Campbell County Memorial Hospital, in Gillette, Wyoming, after he slipped on ice and hit his chin on a sawhorse. (T. 323, 328) Plaintiff had a loose tooth and a laceration inside of his mouth. (T. 327) The doctor advised him to see a dentist for his tooth, quit smoking, and prescribed Augmentin and Percocet. (T. 327)

Plaintiff reported rib and left posterior back pain with difficulty breathing and an ear laceration, after being hit by a vehicle, on August 30, 2008. (T. 330, 347).  His past medical history included COPD. (T. 331) Plaintiff's chest X-ray was negative and CT of the head unremarkable, however there were degenerative changes in the cervical spine, but no acute finding.  A CT of the chest showed slight bucking of the eighth and ninth rib.  A CT of the abdomen and pelvis showed no acute abnormality, but showed prostate calcification. (T. 349) The doctor's impressions were a rib fracture to the left lower ribs, an ear laceration, blunt trauma and alcohol intoxication. (T. 347) Upon discharge, Plaintiff was prescribed Vicodin, instructed to ice the injured areas, and take Motrin and Tylenol, as needed. (T. 333-334)

On April 9, 2012, Plaintiff went to Mercy River Valley Musculoskeletal for a neurosurgical evaluation of chronic low back and right leg pain, with Advanced Nurse Practitioner Janet R. Canada. (T. 244) Plaintiff indicated the lower back pain radiated bilaterally with numbness and tingling in the lower extremities, but mainly in the right lower extremity radiating to the right buttock, the right posterior thigh and anterior right lower leg.  The symptoms were exacerbated by prolonged walking, standing, twisting and bending, though he received some relief by lying recumbent and heat. (T. 245)

Plaintiff had a normal gait, walked on his heels and toes without difficulty, however he had decreased flexion and extension of the lumbar torso and exacerbated pain with lumbar flexion and rotation.  Plaintiff denied chest pain, shortness of breath, heat palpitations, bowel or bladder dysfunction and peripheral edema. (T. 245) Plaintiff experienced pain to palpation over the bilateral lumbar facet region and no pain with palpation over the midline or muscle spasm.  The examination notes indicated Plaintiff had equal lower extremity strength and bilateral patellar deep tendon reflexes with good bilateral motor function.  There were no deficits with plantar flexion or dorsiflexion bilaterally.  The bilateral achilles deep tendon reflexes were absent and Plaintiff's right last three toes had decreased vibratory sensation.  Plaintiff had a negative left straight raise at 60 degrees and his right straight leg raise at 60 degrees exacerbated his right lower back and right buttock. (T. 245)

The X-ray revealed a well maintained alignment of the lumbar vertebral bodies.  There was mild rotoscoliosis at L3-L4 and six non-rib-bearing vertebral levels in the lumbar spine.  The oblique view showed degenerative changes of the bilateral lumbar facets in the lower lumbar spine, while the lateral view showed disc space narrowing at L5-S1 and the end-plate showed degenerative changes throughout the lumbar spine. (T. 245) The doctor's impressions were a mild degenerative change of the lumbar spine with lumbago, right lumbar radiculopathy and degenerative disc disease of the lumbar spine. (T. 246) Plaintiff was prescribed Mobic and surgery was not recommend. (T. 246)

The MRI evaluation conducted on May 1, 2012, done in conjunction with Dr. Arthur M. Johnson, neurosurgeon, showed degenerative disc disease at L1-2, L2-3, mild broad based disc bulges at L2-3, L3-4, and a left lateral disc protrusion at L3-4 with possible L3 nerve root effacement.  The results showed no high grade spinal canal stenosis, high grade foraminal stenosis,

focal disc herniation, or significant nerve root involvement, in accordance with the patient's presenting complaints. (T. 282) Plaintiff's plan of care included physical therapy and traction, epidural injection therapy, continued us of Mobic, weight loss, stretch, proper posture, and diet. (T. 283)

On December 7, 2012, Plaintiff went the emergency room at Mercy Hospital Fort Smith due to abdominal pain.  During the examination Plaintiff denied shortness of breath and back pain and indicated he had smoked one pack of cigarettes a day for thirty years. (T. 293-294) Chest X-rays showed no acute abnormalities, infiltrates or cardiomegaly.  A renal scan showed small intrarenal stones with a distended gallbladder, but no evidence of gallstones.  (T. 301) The EKG showed no evidence of ischemia, arrhythmia, or acute process. (T. 297, 310) Plaintiff was prescribed Hydrocodone-Acetaminophen and Phenergan. (T. 297)

At Plaintiff's follow-up appointment with Dr. Johnson on December 18, 2012, he indicated physical therapy had not produced good results and he had cancelled his epidural steroid injection due to a meningitis scare.  A review of Plaintiff's symptoms showed intermittent numbness in his right lower extremity, a burning dysesthesia type of pain and emphysema. (T. 312-313) At the time of the follow-up, Plaintiff was taking Phenergan and Albuterol, his gait and station were normal, and he had a negative straight leg raise on both legs. (T. 312) Plaintiff experienced no pain with internal or external rotation of the hips, however he had limited movement with flexion and extension of the lumbar spine. (T. 313) Dr. Johnson found no palpable tenderness over the sacroiliac joint or cervical vertebra and assessed Plaintiff with low back pain with sciatica, degeneration, intervertebral disc, lumbar, lumbago and recommended an education on smoking cessation. (T. 313-314)

In reviewing the MRI, Dr. Johnson found Plaintiff's degenerative disc disease changed with mild disc bulges at L2-3, L3-4 and L4-5, with no nerve root compression or thecal sac compression, a small lateral disc protrusion at the L3-4 level, and determined the foramen might cause pressure on the left L3 nerve root. (T. 313) Dr. Johnson ordered Plaintiff to undergo smoking cessation education, prescribed Naprosyn, Robaxin and Hydrocodone-Acetaminophen and limited Plaintiff not to lift more than thirty pounds and only occasionally: twist, bend, kneel, or stoop.  No surgical intervention was recommended. (T. 314)

Plaintiff went to Western Arkansas Primary Care on May 18, 2013, due to shortness of breath, dyspnea and fatigue. (T. 21) The notes indicated Plaintiff had a past history of COPD and his symptoms exacerbated with movement. (T. 21) During a musculoskeletal examine, the records indicated no pain, tenderness or limitation of motion, and no muscle or join pain. (T. 21) Plaintiff had wheezing in the lungs, audible wheezing and respiratory distress. (T. 22) The doctor's plan was to refer Plaintiff to a pulmonologist, however Plaintiff had trouble meeting the financial cost. (T. 22) Plaintiff was instruct to use Flunisolide, breathing treatments and attend a smoking cessation counseling on comorbidity and COPD. (T. 22)

The objective medical evidence is as follows.

On April 18, 2012, Dr. Dan Gardner, state agency medical consultant, reviewed the record and determined Plaintiff was able to lift, carry push and pull 20 pounds occasionally and 10 pounds frequently, sit for six hours during an eight-hour day and stand and/or walk for six hours during an eight-hour day.  Based upon the medical records and the activities of daily living, Dr. Gardner determined Plaintiff could perform work at the light exertional level. (T. 253-260) Dr. Lucy Sauer, state agency medical consultant, reviewed the record and affirmed Dr. Gardner's findings on June 25, 2012. (T. 289)

## IV.   <u>Discussion:</u>

The Court must determine whether substantial evidence, taking the record as a whole, supports the Commissioner's decision Plaintiff had not been disabled from the alleged date of onset on January 15, 2012. Plaintiff raises two issues on appeal, which can be summarized as: (A) the ALJ erred when he found Plaintiff's degenerative disc disease did not meet or equal listing 1.04(A); and, (B) the ALJ erred in not finding Plaintiff's COPD severe. (Doc. 10 pp. 10-16)

### <u>Whether Plaintiff's Degenerative Disc Disease met the Criteria for Listing §1.04(A)</u>

Plaintiff argues the ALJ committed error at step three by finding Plaintiff did not meet or equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.   The undersigned finds substantial evidence supported the ALJ's determination that Plaintiff's degenerative disc disease did not meet the criteria for listing §1.04(A).

The burden is on the Plaintiff at step three to establish his impairment meets or equals a listing. *See Johnson v. Barnhart*, 390 F. 3d 1067, 1070 (8th Cir. 2004) "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." *Brown ex rel. Williams v. Barnhart*, 388 F.3d 1150, 1152 (8th Cir. 2004) (internal quotations and citation omitted). The question is whether the ALJ "consider[ed] evidence of a listed impairment and concluded that there was no showing on th[e] record that the claimant's impairments . . . m[et] or are equivalent to any of the listed impairments." *Karlix v. Barnhart*, 457 F.3d 742, 746 (8th Cir. 2006) (internal quotations omitted). "The fact that the ALJ d[oes] not elaborate on this conclusion does not require reversal [where] the record supports h[is] overall conclusion." *Id*.

The listing, set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1, §1.04, is as follows:

"Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equine) or the spinal cord. With:

(A) Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or

(B) Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful synesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or

(C) Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imagining, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b."

The ALJ determined Plaintiff's medical records did not demonstrate Plaintiff had a "compromised nerve root or spinal cord with evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication." (T. 29) Plaintiff claims he met the criteria as he had a disorder of the spine resulting in: degenerative disc disease, nerve compression, the nerve root compression characterized by neuro-anatomic distribution of pain, limitation in his spine, sensory, reflex, motor loss, and positive bilateral straight leg raise test. (Doc. 10 pp. 11-14)

Plaintiff's MRI from May 2012 indicated he had possible nerve root effacement at L3, and no high grade spinal canal stenosis, high grade foraminal stenosis, focal disc herniation, and or significant nerve root involvement. (T. 282) In December 2012, Plaintiff had negative straight leg raise on both lower extremities. (T. 313) Dr. Johnson reviewed the MRI of the lower spine and determined Plaintiff's degenerative disc disease changed with mild disc bulges at L2-3, L3-4 and L4-5, there was no evidence of root compression or thecal sac compression, however a small lateral disc protrusion at the L3-4 level *might* cause pressure on the left L3 nerve root. (T. 313) (Emphasis added.) The Court has held when a medical report indicates that a nerve root "may be" contacted or compressed, it does not establish a compromise or the nerve root. *See Bogart v. Colvin*, No. 12-5207, 2013 WL 5937041, at *3 (W.D.Ark. Nov. 6, 2013)(quoting *Decker v. Asture*, No. 11–3115–

CV–S–DGK–SSA, 2001 WL 600257, at *2 (W.D.Mo. Nov. 30, 2011)("probable" or "possible" findings, however, are not sufficient to establish compromise of the nerve root or spinal cord as required by Listing § 1.04. *See* 20 C.F.R. pt 404, subpt. P, app. 1, § 1.04.)

In order for the Plaintiff to have met the listing, he would have had to show evidence of nerve root compression, accompanied by sensory or reflex loss and if located in the lumbar area accompanied by a straight leg raise. The medical records did not indicate Plaintiff had nerve root compression, thus Plaintiff's degenerative disc disease does not meet the listing requirements. As for the straight leg raise, the most recent test performed by Dr. Johnson was negative for both legs. Thus, the Court finds, based upon the medical evidence and medical diagnostic testing, substantial evidence exists to support the ALJ's finding that Plaintiff's degenerative disc disease did not meet or medially equal the listing in § 1.04(A).

## Severity of Impairment

Plaintiff next argues that the ALJ erred in finding that Plaintiff's COPD is not severe. In reviewing the record, the Court finds substantial evidence supported the ALJ's finding that Plaintiff's COPD is not severe.

A "severe impairment is defined as one which 'significantly limits [the claimant's] physical or mental ability to do basic work activities.'" *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (quoting 20 C.F.R. § 404.1520(c)). The impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms (see [20 C.F.R.] § 404.1527). 20 C.F.R. § 404.1508. Alleged impairments may not be considered severe when they are stabilized by treatment and otherwise are generally unsupported

by the medical record. *Johnston v. Apfel*, 210 F.3d 870, 875 (8th Cir. 2000); *see also Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000) (plaintiff bears the burden to establish severe impairments at step-two of the sequential evaluation).

The ALJ determined Plaintiff's COPD did not cause more than a minimal limitation on his ability to do basic work-like tasks.  The ALJ based this determination upon Plaintiff's testimony regarding playing and singing in a band in venues where smoking occurred; he could walk a couple of blocks before stopping to catch his breath; and, he denied shortness of breath or chest pain at his visit with Dr. Johnson. Finally, the emergency room visit did not place any further restrictions upon Plaintiff activities. (T. 29)

Plaintiff alleged an impairment of emphysema in his application for disability, however the record is devoid of pulmonary tests, environmental limitations, complaints of shortness of breath or asthmatic symptoms, dyspnea on exertion, cough, wheezing, sputum production, hemoptysis and chest pain, which are used to determine the severity of COPD. (T. 201) 20 C.F.R. Pt. 404, Subpt. P, App. 1 §3.00. Alleged impairments may not be considered severe when they are stabilized by treatment and otherwise are generally unsupported by the medical record. *Johnston v. Apfel*, 210 F.3d at 875.

Plaintiff's COPD was mentioned as past medical history on August 30, 2008, and December 18, 2012, and he took Albuterol.  However, Plaintiff's COPD must not have been as severe as alleged as he denied shortness of breath and chest pain on April 9, 2012 and December 7, 2012. If the impairment was severe, the Court expected to see more medical evidence regarding treatment.  Plaintiff indicated he used an Albuterol inhaler, however there was no medical evidence submitted during the relevant time period prescribing an inhaler for his COPD.

Dr. Johnson included emphysema in his review his symptoms on December 18, 2012, however he did not note any issues with regard to heavy breathing, asthmatic symptoms, and shortness of breath or coughing during the examination.  If Plaintiff's COPD was as severe as alleged, Plaintiff would not have denied being short of breath on the few occasions he visited the doctor.  Plaintiff testified he played and sang in a band in venues where smoking occurred, and he continued to smoke after being counselled on cessation. (T. 22, 314, 327) These activities and failure to follow prescribed treatment all lead the undersigned to believe Plaintiff's impairment of COPD was not as severe as alleged.

While the Plaintiff included treatment records from May 18, 2013, they are outside the relevant time period for this application, they may, however, form a basis for filing a new application.

Plaintiff bears the burden to establish severe impairments at step-two of the sequential evaluation, and Plaintiff had not met his burden concerning his COPD. *Mittlestedt v. Apfel*, 204 F.3d at 852. The medical evidence, taken as a whole, supports the ALJ's finding that the Plaintiff's COPD was not severe.

### V.    Conclusion:

Having carefully reviewed the record as a whole, the undersigned finds that substantial evidence supports the Commissioner's decision denying Plaintiff benefits, and the Commissioner's decision should be affirmed. Plaintiff's Complaint should be dismissed with prejudice.

Dated this 6th day of May, 2015.

/s/ Mark E. Ford
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE

12